JUSTICE SHEEHY,
dissenting:
*517 From the record here, it does not appear that Montana Mining Properties, Inc. has much of a case. To mask its lack of substance, Montana Mining Properties, Inc., through its counsel, has mounted a vengeful attack on the impartiality and integrity of a judicial officer. This litigation involves essentially two questions: 1) did Montana Mining Properties breach its contract of purchase with Dennis R. Washington; and, 2) does Montana Mining Properties (hereinafter MMP) have any right of first refusal as to other mining properties proposed to be sold by Dennis R. Washington to ASARCO, Inc?
Under MMP’s contract with Washington, MMP was required to pay balances on the contract to Washington by certain dates in U.S. dollars or in “unrestricted, free trading” common stock of the same value. The record before us is clear that MMP neither paid Washington the balance due in U.S. dollars at the times required, nor did it provide him with unrestricted and free-trading common stock as the alternative. Therefore, MMP breached the contract and is not entitled to an injunction.
The second question relates to a right of first refusal, which was included in the contract between MMP and Washington. The right of first refusal applied to other mining properties held by Washington in the Butte area. Washington made a deal for the sale of certain of those properties or an interest therein to ASARCO. Washington gave notice to MMP of the proposed offer, and MMP has not at any time met or tendered the amounts of money necessary to meet the first refusal requirement. Aside from its obvious breach of contract, if a right of first refusal existed in MMP, the latter did not or could not meet the offer, which takes care of the first refusal issue.
In the light of the record, District Judge Sullivan properly denied MMP’s request for a temporary injunction to stop the ASARCO deal. Upon the denial of the injunction, Washington and ASARCO completed their deal. Although the temporary injunction was denied, the principal action itself remains undecided in District Court. It is possible, but only barely possible, it seems to me, that MMP might have other evidence to turn the tables as to the contract breach. Yet MMP did not appeal the denial of the temporary injunction. Instead, it mounted its attack against Judge Sullivan, and eventually District Judge Frank Davis was called in to determine whether Judge Sullivan should be disqualified. Judge Davis denied the disqualification after the hearing, concluding properly, I think, that “the appearance of impropriety was mostly in the eye of the loser. ’ ’
The alleged impropriety turns on three incidents: (1) the temporary *518 employment of Pat Sullivan as an intern for the law firm representing Washington; (2) a ten-minute conversation between District Judge Sullivan and Ronald MacDonald, one of Washington’s attorneys, at a football game; and (3) the permission by Judge Sullivan to allow the testimony of Milton Datsopoulos as a witness in the temporary injunction hearings.
The employment by law firms of law school students as temporary interns is common in Montana. It is a recognition by the law firms of this State that support of our Law School is increased by offering hands-on law office experience to law school students. Washington’s law firm employs five or six of such interns per year. Such employment, particularly when the intern has never been directly involved in the case at issue does not qualify as a basis for disqualification of a district judge. Canon 3C, Canons of Judicial Ethics relating to the disqualification of a judge because of relationship applies only if the relative is “acting as a Lawyer in the proceeding.” The commentary under that Canon, published by the American Bar Association, is as follows:
“The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that ‘his impartiality might reasonably be questioned’ under Canon 3C(1) or that the lawyer-relative is known by the judge to have an interest in the law firm that could be ‘substantially affected by the outcome of the proceeding’ under Canon 3 C (1) (d) (iii) may require his disqualification.”
Here the employment of Pat Sullivan as an intern does not meet any of the propositions set forth in the commentary. In fact, he was not a Lawyer when acting as an intern. Pity the sons and daughters of district judges in the future who as law students will not be selected as interns because of the jeopardy the majority opinion now places on such employment.
The facts pertaining to the association of District Judge Sullivan with Ronald MacDonald, of Washington’s law firm, at a University football game are far overblown. It is a common experience for attenders at such football games to be invited for a short visit at one or other of the several plush boxes maintained by law firms and corporations of Montana at the University stadium. As a result, such boxes are usually crowded, with much passing in and out by visitors. This Court should not countenance such a casual contact as indicating bias unless we are willing to examine strictly our own tendencies. We *519 have just returned from the annual meeting of the State Bar of Montana, where probably every member of this Court associated at cocktail parties and other events with counsel from around the State, many of whom have pending before this Court appeals or other original proceedings. To hold that such contacts, including casual visits at a University stadium football box, indicate bias is nothing more than silly.
The third point is the testimony of Mr. Datsopoulos at the injunction hearing itself. Milton Datsopoulos was called to the stand, and his testimony was objected to as follows:
“MR. PHILLIPS: Your Honor, we object to this witness testifying concerning material matters in dispute of this case. He’s appeared here at the counsel table as counsel of record.
“MR. MACDONALD: May I be heard with regard to that, your Honor? I am laying this as foundation. There have been a number of statements that have been made with regard to Mr. Datsopoulos’ participation. Mr. Myles has testified, for our benefit for the first time, that it is his understanding Mr. Datsopoulos authorized the holding of stock as was testified by Mr. Clive Smith.
“It comes somewhat as a surprise to us, and I believe that it is appropriate to call Mr. Datsopoulos who hasn’t participated materially other than some comic relief with these proceedings.
“THE COURT: I am going to allow it. Overruled. You may proceed in question.”
In the majority opinion, Rule 3.7(a) of the Montana Rules of Professional Conduct is cited, which states that a lawyer shall not testify as a witness when he is an advocate at the trial, with three exceptions. One of those exceptions is where “disqualification of the lawyer would work substantial hardship on the client. ’ ’ In the case at bar, it was the contention of MMP that its delivery of stock to an escrow holder in the Channel Islands was in fact delivery of stock to Mr. Washington. The effect of the Smith testimony was that Mr. Datsopoulos had authorized such a delivery of the stock. Washington’s interests would be substantially affected if Smith’s testimony were not contravened. Yet the majority holds that the exception contained in the Montana Rules of Professional Conduct does not apply, saying “None of these exceptions apply here.” Thus, this Court, without an appeal, has decided an issue that should have been raised by appeal. In any event, on the record here, the ruling of District Judge Sullivan with respect to the lawyer’s testimony was correct.
All through the majority opinion, it is evident, the majority can find *520 no fault, no bias, no partiality or improper orders made by the District Court. The majority can find no direct fault with the ruling of District Judge Davis that disqualification of Judge Sullivan was not necessary. Yet the majority, saying in effect that they could never convict Judge Sullivan of bias, nevertheless convict him on the basis of a perceived appearance of impropriety. The majority have attenuated judicial integrity to the breaking point, in a case without warrant for such action I dissent.